*In re* MARRIAGE OF BARBARA WALTERS, Petitioner-Appellant, and JAMES WALTERS, Respondent-Appellee.

Second District   No. 2—91—1104

Opinion filed November 24, 1992.

Mark Schuster, of Meyers, Schuster & Meyers, of Elgin, for appellant.

Robert Schey and Mark L. Karno, both of Robert Schey & Associates, of Chicago, for appellee.

JUSTICE DUNN delivered the opinion of the court:

Petitioner and cross-respondent (hereafter referred to as petitioner), Barbara Walters, and respondent and cross-petitioner (hereafter referred to as respondent), James Walters, were divorced on October 22, 1975. The judgment of dissolution of marriage incorporated a settlement agreement which provided, *inter alia*, that petitioner would have custody of the parties' three children, Sandra, Suzanne and Russell; that respondent would provide child support equal to 30% of his net income; that respondent would provide hospitalization insurance for the children and would pay for the extraordinary medical and dental expenses; and that respondent would pay for the college expenses of the children if he was financially able to do so and the child was college material. In 1989, petitioner brought an action for modification of support and for a rule to show cause against respondent for his failure: (1) to pay child support; (2) to maintain hospitalization insurance on the children; (3) to pay extraordinary medical and dental expenses; (4) to provide petitioner with proof of life insurance naming the children as beneficiaries; and (5) to contribute to the college expenses of the children. The trial court granted a temporary increase in child support to $200 per week. Respondent filed a cross-petition to reduce child support and to modify his obligation to pay college expenses.

This appeal stems from the trial court's order regarding the parties' petitions. The trial court reduced respondent's obligation for child support to $75 per week; determined that respondent's responsibility for his daughters' education ended at the time that they married; terminated respondent's obligation to pay college expenses for his son, Russell; accepted the parties' stipulation that respondent owed $3,836.01 in child support and assessed a 20% charge on the money owed; determined that Barbara was responsible for payment of all past medical expenses for the parties' children before their majority or graduation, whichever came last; and ordered that in the future Barbara had a duty to consult with James before incurring any non-emergency medical expenses for Russell and to submit the bill to James within 10 days of receipt from the care provider. The trial court further ordered Barbara to pay $6,000 plus costs of $750 for James' attorney fees and James was ordered to pay $2,500 of Barbara's attorney fees plus $450 in costs.

Petitioner brings this appeal, contending that: (1) the trial court erred in determining that respondent had no responsibility for the college expenses his daughters incurred after they married; (2) the trial

court erred in ruling that respondent need not pay the medical expenses which were incurred for the children after the divorce; (3) the trial court erred in ruling that respondent had no further obligation for Russell's college expenses; and (4) the trial court abused its discretion by its award of attorney fees. The following facts of record are relevant to this appeal.

For years after the dissolution of their marriage, the parties appeared frequently in court. On February 5, 1980, the trial court modified respondent's child support obligation to $25 per week. Various post-decree proceedings were brought until November 9, 1983. After that date, the parties did not see each other until a chance meeting in a fast-food restaurant in 1989. After petitioner initiated this action, the trial court entered a temporary order modifying respondent's support obligation to $200 per week. The order was based on evidence that James had a taxable income of $53,718 for 1988, and the order was subject to modification upon the completion of discovery.

The first issue raised by petitioner is whether the trial court correctly ruled that respondent was relieved of his obligation to pay for the college expenses of his daughters, Sandra and Suzanne, once they married. Petitioner had requested reimbursement of the sum of $1,032 for Sandra's tuition and books at McHenry County College from 1983 to 1986. She also requested that respondent reimburse her for Suzanne's tuition and books at McHenry County College for the years 1984 to 1989 and for tuition, books, and room and board at Northern Illinois University from 1989 through 1990. The trial court ordered respondent to pay the expenses for Sandra and Suzanne up until the dates of their marriages.

The original agreement provided, "[d]efendant shall be responsible for a college education for each child to the best of his financial ability, provided said child is college material." Petitioner contends that there was no statutory mandate that emancipation through marriage relieves the party of his obligation to pay for the education expenses and maintenance associated therewith so respondent was obligated to pay for expenses and maintenance until the children finished college as long as he had the financial ability to pay. Alternatively, petitioner contends that Suzanne was never emancipated because her marriage was annulled and she continued to live at home and be supported by her mother even after her marriage.

The evidence showed that Sandra was born on September 17, 1966. She married in spring 1986 and was still married at the time of these proceedings in the trial court. The expenses incurred in connection with her college education were for the school years 1983

through 1986. Neither party disputes the court's order that respondent must pay the education expenses claimed by petitioner because they were all incurred prior to Sandra's marriage in spring 1986. Petitioner does dispute the court's finding that Sandra's emancipation by marriage relieved respondent of any further obligation to pay her education expenses.

Suzanne was born on June 26, 1968, and she married on March 6, 1987. She attended McHenry Junior College from spring 1984 until spring 1989 and then attended Northern Illinois University. Petitioner claimed to have spent over $13,000 for Suzanne's college education, including room and board while Suzanne attended Northern Illinois University. The court awarded $423 for tuition and fees and $208.26 for books for Suzanne's college education, an amount the trial court found to cover expenses until March 6, 1987, the date on which Suzanne married.

In this appeal, we are called upon to determine if section 513 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 513) allows awards for college expenses and maintenance of a child who is emancipated through marriage.

The trial court found that section 513 of the Act provides for children who are not emancipated and that the daughters' marriages emancipated them and relieved respondent of his obligation to pay for their education expenses and maintenance. Section 513 of the Act provides:

> "Support for Non-minor Children and Educational Expenses. The court may award sums of money out of the property and income of either or both parties for the support of the child or children of the parties who have attained majority and are not otherwise emancipated only when such child is mentally or physically disabled; and the application therefor may be made before or after such child has attained majority age. The Court also may make such provision for the education and maintenance of the child or children, whether of minor or majority age, out of the property and income of either or both of its parents as equity may require, whether application is made therefor before or after such child has, or children have, attained majority age. The authority under this Section to make provision for education and maintenance extends not only to periods of college education or professional or other training after graduation from high school but also to any period during which a child of the parties is still attending high school, even though he or she attained the age of 18. In making such

awards, the court shall consider all relevant factors which shall appear reasonable and necessary, including;

(a) The financial resources of both parents.

(b) The standard of living the child would have enjoyed had the marriage not been dissolved.

(c) The financial resources of the child." (Ill. Rev. Stat. 1989, ch. 40, par. 513.)

The clear language of the statute allows provision for the children's education to be made even if the child is of majority age. (*In re Marriage of Falat* (1990), 201 Ill. App. 3d 320, 327.) The question of whether the statute allows for provision for the children's education to be made even if the child is emancipated other than by age appears to be one of first impression in Illinois. We hold that it does not.

We note first that a similar issue was raised in the case of *In re Marriage of Greenberg* (1981), 102 Ill. App. 3d 938, but the court did not address the issue, finding that the party's failure to raise the issue at the trial level resulted in a waiver of the issue on appeal. (102 Ill. App. 3d at 947-48.) Nevertheless, the court stated that emancipation does not preclude the court from ordering the payment of education expenses, citing *In re Marriage of Taylor* (1980), 89 Ill. App. 3d 278. A close look at *Taylor* reveals that the court used the word "emancipation" as synonymous with reaching majority age in holding that education expenses may be awarded after "emancipation" even if the adult child is not mentally or physically disabled. (89 Ill. App. 3d at 282.) Thus, the issue of whether expenses may be awarded for a child emancipated by marriage has not been squarely addressed before.

■ The primary rule of statutory construction is to ascertain and effectuate the legislature's intent. In doing so, a court looks first to the statutory language itself. If the language is clear, the court must give it effect and should not look to extrinsic aids for construction. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277.) Here, the statutory language allows awards for education expenses and maintenance "whether of minor or majority age." (Ill. Rev. Stat. 1989, ch. 40, par. 513.) It is clear that emancipation includes, but is not limited to, reaching the age of majority. Emancipation can occur when a child voluntarily leaves the parental roof, attains the age of majority, marries, or enters the armed forces. (*In re Marriage of Donahoe* (1983), 114 Ill. App. 3d 470, 475.) The legislature could easily have allowed awards for education expenses and maintenance even in the case of emancipation, but it did not do so.

An elementary rule of construction is that when the legislature uses certain words in one instance and different words in another, it intends a different meaning. (*Aurora Pizza Hut, Inc. v. Hayter* (1979), 79 Ill. App. 3d 1102, 1105-06.) In section 513, the legislature uses both the term "emancipation" and the phrase "majority age" in determining when support and when awards for education are allowed. Since the statute specifically provides for awards for education expenses and maintenance even if the child reaches majority, but does not specifically allow awards in the case of other emancipating events, we conclude that the court may award education expenses and maintenance for a child who is emancipated by reaching majority age but not by other means. Accordingly, we agree with the trial court that respondent's obligation to provide maintenance and to pay for college expenses of his daughters terminated if they became emancipated through marriage.

Our conclusion requires the resolution of petitioner's alternate argument, which is that Suzanne was not emancipated by her marriage because she continued to live at home and be supported by her mother and because her marriage was eventually declared invalid.

Self-emancipation occurs "[w]hen a child who is physically and mentally able to take care of himself voluntarily abandons the parental roof and leaves its protection and influence and goes out to fight the battle of life on his own account." (*Iroquois Iron Co. v. Industrial Comm'n* (1920), 294 Ill. 106, 109.) Other emancipating circumstances include attaining the age of majority, marriage, or entering the armed forces. (*Donahoe*, 114 Ill. App. 3d at 475.) What constitutes an emancipation is a question of law, but whether there has been an emancipation is a question of fact. *State Farm Mutual Automobile Insurance Co. v. Differding* (1977), 46 Ill. App. 3d 15, 19, *rev'd on other grounds* (1977), 69 Ill. 2d 103.

The evidence showed that Suzanne married Timothy Heuer on March 6, 1987. The parties stipulated that if called as a witness, Suzanne would testify that she never lived with Timothy Heuer and that she continued to reside with her mother when she was not at school. The marriage was declared invalid, although the date of the declaration is not of record. At the trial level and on appeal, the parties do not dispute the facts relevant to the determination of emancipation, but only disagree as to whether these facts indicate an emancipation.

The court relied on the case of *In re Marriage of Harris* (1990), 203 Ill. App. 3d 241, in determining that once Suzanne married, her father had no more obligation to support her. In that case, the parties orally agreed at the dissolution proceedings that the intention of the

parties was to have the husband provide maintenance for his ex-wife until remarriage. The ex-wife remarried, but then had the second marriage annulled. An Act provision indicates that maintenance is terminated upon the remarriage of the party receiving it unless otherwise agreed by the parties in a written agreement set forth in the judgment or approved by the court. (Ill. Rev. Stat. 1987, ch. 40, par. 510(c).) The court held that "remarriage" as used in the Act means the ceremony of marriage, not the status, and the declaration of invalidity of the new marriage did not act to reinstate the maintenance obligation. (*Harris*, 203 Ill. App. 3d at 246.) That proposition has no application here because the Act does not provide separately for modification of the education support obligation in the event of "remarriage" or even "marriage." In terms of providing for education expenses, the Act is silent as to marriage. Our concern is not whether a marriage which is declared invalid constitutes a "marriage" as the term is used in a statute, but whether a marriage is an emancipating event.

■ The evidence is uncontradicted that despite her marriage Suzanne never left home and continued to be supported by her mother until and after her marriage was declared invalid. Under these facts, we determine that Suzanne's marriage was not an emancipating event such that her father's obligation to provide for her education and maintenance terminated. The court ordered respondent to pay petitioner $631.26 for Suzanne's tuition, fees and book costs. This amount covered the "identifiable expenses" for Suzanne's college expenses until the date of her marriage. We remand this cause for a determination of the expenses incurred by Suzanne for education and maintenance after March 6, 1987, as we are unable to determine the exact amount incurred from the record. The trial court noted the difficulty in determining the exact expenditures from the pile of checks and bills submitted, and we remand in order that the trial court may review the evidence and accept any additional evidence it finds necessary to resolve this question. The trial court must then determine whether and to what extent respondent had the financial ability to contribute to these expenditures.

We turn now to the second issue raised by petitioner. She contends that the trial court erred in ruling that respondent need not pay the medical expenses that were incurred for the children after the divorce until the time petitioner initiated these proceedings.

The agreement incorporated by the judgment of dissolution of marriage provided the respondent would maintain hospitalization insurance on the minor children and be responsible for all extraordinary

medical and dental expenses of the minor children. Extraordinary expenses were those in excess of $50 or "incurred by way of accident, surgery, broken bones, teeth straightening and the like." It did not cover routine office visits, or filling of cavities. Petitioner was to consult with respondent before incurring any extraordinary expense except in case of emergency where immediate action needed to be taken.

It is undisputed that petitioner never consulted with respondent before incurring any of the expenses for which she sought reimbursement. However, petitioner contended that prior consultation was not possible because she did not know respondent's whereabouts. Petitioner contends that since the evidence showed that she did not know of respondent's address she should not be barred from recovering the medical expenses of the minor children despite the fact that she did not consult with respondent prior to the treatment. Her argument is that she was unable to comply with the condition precedent because of the respondent's actions. The court chose not to believe the petitioner and found that petitioner must have known respondent's address, but simply held onto the bills "until the right moment." The court denied petitioner's request for reimbursement of bills totalling over $23,000.

The evidence showed that for about one year after the parties' divorce respondent lived with his parents in Norridge. He then moved to Round Lake until 1984 and moved to Chicago in 1984 where he kept one address until June 1988. In June 1988, he moved to Spring Grove, where he resided until the time of the proceedings below.

The evidence presented as to whether petitioner knew the whereabouts of respondent is conflicting. On the one hand, petitioner claimed that she lost track of respondent in 1983. She testified that she telephoned respondent's parents' home in spring 1986 in order to locate respondent, but respondent's mother hung up without providing the information. The support checks she received from respondent had no return address. Petitioner telephoned the Cook County clerk's office, but the most recent address they had was respondent's Round Lake address, which was not his current address. She contacted the Round Lake postmaster, but he did not have a forwarding address. According to petitioner, she hired three investigators in an attempt to locate respondent, but had no success. Respondent's driver's license did not bear his most current address, and the Secretary of State did not have his most current address. Respondent explained that he used his old Chicago address because his insurance agent told him the rates

would be lower with that address than his current one in Spring Grove.

On the other hand, respondent presented evidence supporting his contention that petitioner knew where to find him. First, the parties were involved in post-decree litigation until November 1983. Respondent testified that Russell always had his address and he had informed petitioner of changes of address each time he and his wife moved. Respondent submitted a card which he had sent to Sandra after her marriage with his correct return address and which bore a postmark date of November 21, 1986, and a handwritten notation, "Return to Sender." He submitted further documents indicating that his utility bills were maintained in his correct name and address and that the Rockford Diocese had contacted him in Round Lake on August 24, 1984, regarding petitioner's request for an annulment. The evidence established that he had always lived in the Chicago area since the dissolution of the parties' marriage. Respondent's wife testified that she sent petitioner a change of address card when they moved from Round Lake to Chicago. Finally, while petitioner presented evidence that she learned that respondent might be in Florida from the investigators she hired, respondent argued that he had never lived in Florida and that petitioner may have been trying to locate his present wife's ex-husband in Florida in order to take revenge on respondent and his new wife.

■ It seems clear from the amount of evidence presented on both sides that there was conflicting evidence and the trial court had to determine which witnesses to believe. It is the function of the trial court to resolve conflicting testimony by assessing the credibility of the witnesses and the weight to be accorded their testimony. The finding of the trial court will not be disturbed unless it is against the manifest weight of the evidence. (*In re Marriage of Landfield* (1991), 209 Ill. App. 3d 678, 697.) We do not find the trial court's determination that petitioner knew of respondent's address to be against the manifest weight of the evidence. From the evidence presented and the inferences that could reasonably be drawn therefrom, the court could correctly determine that petitioner was not credible in her testimony that she did not know respondent's whereabouts. We will not substitute our judgment unless the opposite conclusion is clearly evident. It is not sufficient that the record would support a contrary decision. (*Nemeth v. Banhalmi* (1984), 125 Ill. App. 3d 938, 962.) Therefore, we will not reverse the trial court's finding in this regard. Accordingly, we hold that petitioner's failure to comply with the condition precedent of consulting with respondent prior to incurring the expenses un-

less they were associated with an emergency bars her from recovering the expenses she would otherwise have been entitled to under the contract.

In an analogous case, this court held that, under the terms of the settlement agreement incorporated by the dissolution of marriage judgment, the wife had a duty to consult with her ex-husband before incurring extraordinary medical expenses on behalf of her children. This court held that the cause must be remanded for a determination by the trial court as to whether petitioner consulted with respondent prior to initiating a course of medical treatment and this court indicated that if the wife had not done so, the ex-husband had no duty to reimburse her for those expenses. *In re Marriage of Talmadge* (1989), 179 Ill. App. 3d 806, 815.

We need not address petitioner's arguments regarding the applicability of the equitable defenses of *laches* and estoppel because we agree with the trial court that petitioner's right to recover was conditioned on her compliance with the consultation provision and her failure to consult respondent relieved him of his obligation to pay the costs incurred.

The next issue petitioner raises is whether the trial court properly modified the settlement agreement to provide that respondent did not have any obligation to pay for the college expenses of his son, Russell. The settlement agreement incorporated into the parties' dissolution judgment provided that respondent would be responsible for his children's college education to the best of his financial ability if the children were college material. The trial court allowed respondent's petition to modify the settlement agreement provision that he pay for college expenses if he had the ability to do so to indicate that respondent was not responsible for Russell's college expenses. The trial court's modification was based on respondent's present inability to pay additional expenses.

The statute permitting the court dissolving a marriage to make provision for the education of any children does not mandate that divorced parents must in all cases provide their children with funds for a college education, but allows the court to make such an award in its discretion. (*In re Support of Pearson* (1986), 111 Ill. 2d 545, 551.) Similarly, the modification of a dissolution of marriage judgment rests in the sound discretion of the court, and a reviewing court will not interfere with the exercise of that discretion in the absence of its abuse. (*In re Marriage of Hardy* (1989), 191 Ill. App. 3d 685, 690.) Petitioner contends that the court abused its discretion by acting prematurely. Specifically, petitioner asserts that the court erred by ruling

on the petition to modify respondent's obligation to pay Russell's college expenses because there was no evidence that Russell was college material or was planning to go to college, and there was no evidence of what his expenses would be. Respondent contends that a substantial change in the financial circumstances of the parties since the original judgment for dissolution justified the trial court's order. He further points to sections 502(f) and 510(a) of the Act (Ill. Rev. Stat. 1989, ch. 40, pars. 502(f), 510(a)) to suggest that, if necessary, when Russell is college-bound the trial court could modify the order again.

■ We agree with petitioner that the trial court abused its discretion in modifying respondent's obligation, which was conditioned on Russell being college material and on respondent's financial ability to provide for the expenses. Obviously, in order to make an intelligent and useful decision there would have to be facts to indicate whether Russell was college material, what his expenses would be, and respondent's financial ability at that time to provide for the expenses. At the time respondent brought this petition, none of these things could be ascertained.

Petitioner did seek reimbursement of expenses associated with one course Russell took at McHenry County College, but that was for a course he took to correct a deficiency in order to graduate from high school. Until such time as Russell decides to pursue a college education, respondent's financial ability to pay for college is not relevant. Obviously, by the time that a determination need be made as to respondent's ability to pay, respondent's financial picture may have changed considerably. We conclude that the trial court abused its discretion in determining that respondent's inability to pay more expenses at the time respondent brought the petition justified a modification of respondent's obligation to pay toward possible future college expenses of an unknown amount. (*Cf. In re Marriage of Kaplan* (1986), 149 Ill. App. 3d 23, 36-37 (where the court held that the trial court did not abuse its discretion in refusing to allocate the college expenses of the minor child between the parties because the child would not enroll in college for six months and there was an expectation that the mother might have a job and be able to provide for some of the expenses by the time they were incurred).) The modified order must be vacated.

The remaining three issues raised by petitioner all relate to the award of attorney fees by the trial court. First, petitioner questions the trial court's determination that respondent should pay $2,500 of petitioner's fees. Petitioner's attorney testified that he spent 40% of his time on child support issues, including the child support arrearage

to which the parties eventually stipulated. Petitioner's attorney also testified that he spent 10% of his time on matters relating to college expenses. Since the fee petition for petitioner's attorney was in the amount of $11,875, it is petitioner's position that the court erred in not assessing one-half of that amount to respondent.

Section 508(b) of the Act provides:

"In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without cause or justification, the court shall order the party against whom the proceeding is brought to pay the costs and reasonable attorney's fees of the prevailing party." (Ill. Rev. Stat. 1989, ch. 40, par. 508(b).)

Petitioner requested a rule to show cause why respondent had not paid child support expenses. The parties stipulated that respondent owed $3,836.01 in past-due child support. While the trial court found that respondent's failure to pay was not contemptuous, it also found that respondent's failure to pay was without cause or justification. Section 508(b) of the Act is mandatory, not discretionary, and does not allow for the court to exercise its discretion as to payment if the defaulting party's conduct was without cause or justification. (*In re Marriage of Clay* (1991), 210 Ill. App. 3d 778, 782.) An award under section 508(b) does not depend on a party's inability to pay the fees or the other party's ability to pay. (*In re Marriage of Cierny* (1989), 187 Ill. App. 3d 334, 348.) The fee awarded is, however, subject to a determination of reasonableness based on, *inter alia*, the time spent, the ability of the lawyers, and the complexity of the work. *In re Marriage of Stanley* (1985), 133 Ill. App. 3d 963, 974.

Petitioner's attorney testified that "child support in general probably consumed about 40 percent of my time." He further estimated that he spent about 30% of his time dealing with medical bills, 10% on the college expense issue, 5% trying to determine if medical insurance was in effect on the children, and about 5% on whether respondent had life insurance in effect. This is the only evidence on how much time petitioner's attorney allocated to the different issues raised in the proceedings below.

First, we note that the estimations of time spent are just that, estimations. In fact, totalling the percentages testified to by petitioner's attorney, it is apparent that they are only rough approximations of the actual breakdown because the total is not 100%. Despite petitioner's claim now being advanced that respondent should be ordered to pay 40% of the fees, petitioner filed a memorandum in support of attorney fees in which she claimed that she should be awarded

30% of the total fees in connection with enforcing the child support obligation. Second, under section 508(b), petitioner was entitled to fees for the amount expended in securing the child support which was in arrears, but the time the attorney expended in working on the college expense issue would not be recoverable under section 508(b) because respondent's failure to pay for the expenses was due to petitioner's failure to request such payment. Therefore, fees should have been awarded at approximately 30% to 40% of the reasonable fees, not the 50% figure requested by petitioner.

In regard to the determination of reasonableness, we note that the trial court found $2,500 to represent reasonable fees expended in obtaining child support arrears under the facts of this case. While that amount was less than 25% of the fees requested, we do not find an abuse of discretion. The trial court may accept or reject the testimony of the petitioning attorney as to the value of the legal services performed. The court may also rely on its own knowledge and experience in determining the value of the services rendered. (*In re Marriage of Salata* (1991), 221 Ill. App. 3d 336, 338-39.) In this case, the court specifically found that both attorneys' rates were reasonable, but that too much time was spent on all matters due to the parties' failure to compromise, and some of petitioner's attorney fees were not sufficiently defined. As stated in the case of *In re Marriage of Mantei* (1991), 222 Ill. App. 3d 933, 942, "[w]hile we recognize the purpose of the statute is to allow a spouse to contest the dissolution on an equal footing so that concerns about incurring large attorney fees will not coerce a litigant into conceding meritorious claims, it is an unreasonable expectation to anticipate that the trial court will automatically require the other party to pay such attorney fees regardless of one's conduct during the litigation. There are times when the failure to compromise is frivolous." The trial court did not abuse its discretion in awarding fees to petitioner in the amount of $2,500.

Next, petitioner contends that the trial court erred in awarding fees to respondent in the amount of $6,000. Respondent requested fees to be awarded in the amount of $29,300. Section 508(a) allows the court to order a party to pay reasonable costs and attorney's fees as follows:

"The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred or, for the purpose of enabling a party lacking sufficient financial resources to obtain or retain legal

representation, expected to be incurred by the other spouse, which award shall be made in connection with the following:

(1) The maintenance or defense of any proceeding under this Act.

(2) The enforcement or modification of any order or judgment under this Act." (Ill. Rev. Stat. 1989, ch. 40, par. 508(a).) Attorney fees are primarily the responsibility of the party for whom the services are rendered. Section 508(a) allows the trial court, after considering the financial resources of the parties, to order either spouse to pay a reasonable amount for his own costs and attorney fees and those necessarily incurred by the other party. To justify an award, the party seeking the fees must show an inability on his part and an ability by the other spouse to pay the fees. (*In re Marriage of Geis* (1987), 159 Ill. App. 3d 975, 990.) The allowance of attorney fees is within the discretion of the trial court, and its determination will not be overturned unless that discretion has been abused. *In re Marriage of Wardell* (1986), 149 Ill. App. 3d 537, 541.

First, petitioner contends that the trial court abused its discretion in awarding fees to respondent because respondent did not present evidence as to his inability to pay his own attorney fees. Respondent was not in court during the second half of the hearing on attorney fees. For this reason, petitioner argues that respondent has waived his claim of his ability or inability to pay fees because he absented himself from the proceedings.

In this case, respondent did submit an affidavit of his assets and expenses. Petitioner's attorney stated he had no objection to the filing of an affidavit. The affidavit showed that respondent's monthly gross income as a salesman was $6,300. Respondent owned a house with his wife and Robert Trzinski which was worth $129,900, and on which there was a mortgage of $116,900. He also owned three automobiles which he valued at a total of $1,200, and had cash on hand of $600. On the other hand, he claimed monthly living expenses of $2,615 and deductions which resulted in a net income of $3,055 per month. He listed debts totalling $91,269.83, including a debt of over $22,000 to the Internal Revenue Service. On the first afternoon of the hearing on attorney fees, the two attorneys testified. The matter was continued to the next afternoon, at which point petitioner's attorney announced his intention to call respondent to the stand. Respondent's attorney informed the court that respondent was not available because he had told respondent that he did not need to be present. Petitioner objected to respondent's absence, asserting that he wished to examine him as an adverse witness in order to question him regarding

real estate which was listed on his latest affidavit but had not been on his previous affidavit presented for the support proceedings. The trial court ruled that it would make a determination based on respondent's affidavit and prior cross-examination of respondent regarding his financial condition.

■ Petitioner is correct in her assertion that a waiver of a party's claim of inability to pay fees may be found if that party refuses to present evidence or answer questions about his own financial circumstances. (*Cierny*, 187 Ill. App. 3d at 348.) In that case, the ex-wife petitioned for an award of fees, and at the hearing on the issue of fees the ex-husband refused to answer any questions regarding his employment or income. On appeal, the ex-husband claimed that the trial court erred in awarding his ex-wife fees because the evidence showed that he was unable to pay the fees. The appellate court held that by his refusal to answer questions regarding his financial circumstances, the ex-husband waived the issue of his ability to pay. Here, however, there is no evidence respondent refused to answer any questions regarding his financial circumstances.

According to the bystander's report, after the testimony by the attorneys as to their fees, counsel for petitioner announced his intention to call respondent as an adverse witness. Respondent's counsel "asserted that no process had issued that required James Walters' appearance to testify." Petitioner could have compelled respondent to appear as a witness by issuing a notice to appear pursuant to Supreme Court Rule 237(b). (134 Ill. 2d R. 237(b).) He did not do so. The trial court's reliance on respondent's and petitioner's affidavits in the absence of any other evidence presented at the hearing was proper.

Petitioner also questions whether respondent showed by the affidavits his inability to pay and petitioner's ability to pay some of respondent's attorney fees. We find that he did. Petitioner owned a mortgage company and represented that she had a net worth of between $300,000 and $450,000. Respondent had a good income, but had substantial debt, the repayment of which left him with barely enough to meet expenses. A party need not be destitute in order to receive an award of attorney fees. *Mantei*, 222 Ill. App. 3d at 941.

Finally, petitioner questions the trial court's assessment of $6,000 as a reasonable amount of fees. Petitioner contends that some of respondent's counsel's petition for fees was not specific enough to prove the services performed or the necessity of those services. He specifically questions entries of a total of 70.75 hours which denote conferences but do not specify what the conferences were about; an entry for 8.5 hours for correspondence review which does not specify what

correspondence was involved; 11.5 hours of organization of unspecified documents; 3.75 hours of drafting revisions to unspecified documents; 78 hours for court appearances for other than trial and of which 3 of the 13 appearances are described; and over 19 hours for court preparation. .

Petitioner questions approximately 190 hours of the time claimed by respondent's attorney. Petitioner ignores the fact that the trial court did reduce respondent's attorney fees from 348 to 192 hours, a cut of 156 hours. We do not agree with petitioner's claim that the entries of the petition as a whole are so vague as to justify a denial of the entire petition. As to specific challenges by petitioner to the petition, it is not clear whether petitioner is questioning a total of 13 appearances, including the three appearances for continuances, or whether she is questioning only the 10 which are not for continuances. Our review indicates that there are more than 13 court appearances listed on the fee petitions. While some entries for court appearances are not sufficiently detailed to allow an award of fees, our review of the petition does not show it to be inadequate for the majority of the entries. We do not, in the absence of a challenge directed at specific entries, find it necessary to evaluate each entry as to its sufficiency. We find no abuse of discretion in the trial court's award of 192 hours billed at a rate of $100 for an award of $19,200.

Of the amount awarded in fees to respondent's attorney, the trial court ordered petitioner to pay $6,000. This is less than one-third of the amount of fees awarded on counsel's petition. Petitioner contends that there was no evidence of how much time respondent's counsel spent in the defense of the action for child support in arrears, and, in the absence of an exact figure, the trial court should have reduced the total fees owing by 40%, the amount *petitioner's* attorney spent in maintaining that portion of the action. Petitioner failed to examine respondent's counsel as to how much time he spent on defense of the child support arrears and failed to make the argument that specific evidence of the amount of time spent needed to be proved. An issue not raised at the trial court cannot be raised for the first time on appeal. (*In re Estate of Halas* (1991), 209 Ill. App. 3d 333, 350.) Relying on its own experience and considering such factors as the expertise of the attorney, the trial court did award an amount it felt was reasonable for the services rendered. Since the trial court's award left respondent responsible for over 65% of his own attorney's fees, the trial court may have required respondent to pay the amount of fees that respondent's counsel charged in conjunction with the unsuccessful defense of the claim for past due child support. All reasonable presump-

tions are in favor of the action of the trial court, and absent an affirmative showing to the contrary, the reviewing court will assume that the trial court understood and applied the law correctly. *In re Estate of Elson* (1983), 120 Ill. App. 3d 649, 656-57.

In consideration of petitioner's final challenge, that the issues were not novel and that petitioner's counsel testified that some of the fees may have been related to unsuccessful petitions respondent filed, we again point to the fact that the trial court did not award full fees against the petitioner. We presume that the trial court's award of reasonable fees took these facts into consideration. We find no abuse of discretion in the court's order requiring petitioner to pay $6,000 of respondent's attorney fees.

For the reasons stated above, we reverse that portion of the judgment which denied the petition for reimbursement of Suzanne's college expenses and maintenance after her marriage and remand the cause for a determination of the amount incurred. We affirm those portions of the trial court's judgment denying the petition for medical expenses and awarding attorney fees. We reverse and vacate the trial court's modification of respondent's obligation for Russell's college expenses.

Affirmed in part; reversed and remanded in part; and reversed and vacated in part.

BOWMAN and DOYLE, JJ., concur.