# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Davis*, 2019 IL App (3d) 170389

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF LISA M. DAVIS, Petitioner-Appellee, and CALEB A. DAVIS, Respondent-Appellant. |
| District & No. | Third District<br>No. 3-17-0389 |
| Filed<br>Rehearing denied | November 6, 2019<br>December 12, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 11-D-494; the Hon. David Garcia, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Caleb A. Davis, of Dallas, Texas, appellant *pro se*.<br><br>Marc A. Bangser and Bradford L. Bennett, of Bennett & Bangser, LLC, of Chicago, for appellee. |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion.<br>Justices Carter and Wright concurred in the judgment and opinion. |

## OPINION

¶ 1    The petitioner, Lisa M. Davis, sought an increase to the child support she was being paid by the respondent, Caleb A. Davis. After the circuit court granted the petition, Caleb appealed. On appeal, he argues that (1) the court lacked subject-matter jurisdiction to modify the child-support order, (2) the court erred when it ordered him to contribute toward Lisa's attorney fees, and (3) the court erred when it denied his motion for a protective order. We affirm.

¶ 2                                          FACTS

¶ 3    Initially, we note that Caleb's statement of facts is replete with argument and omissions such that we choose to strike it as violative of Illinois Supreme Court Rule 341(h)(6) (eff. July 1, 2017), which requires a statement of facts that includes "the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment."

¶ 4    The parties were married in May 2004 and divorced in December 2011. Pursuant to an agreed custody judgment, Lisa was given residential custody of the parties' two children, who were born in 2008 and 2010. Pursuant to the marital settlement agreement, Caleb agreed to pay Lisa $1183.97 per month in child support, which totaled approximately 16.33% of his monthly income. This agreement was made in part due to Caleb agreeing to pay the visitation travel costs for himself and the children, as he was living in San Diego, California, while Lisa and the children were living in Crete, Illinois.

¶ 5    Around the end of 2012, Caleb retired from the Marine Corps and enrolled in law school in New York. In September 2015, Lisa learned that Caleb was employed as an attorney in Dallas, Texas. After Lisa requested information on his new income, Caleb provided a pay stub to her in November 2015 that indicated he was making $185,000 per year. Caleb was also receiving $31,716 per year in veteran's benefits.

¶ 6    As a result of her learning of Caleb's increased income, Lisa filed a petition to increase child support on January 8, 2016. In part, the petition alleged that Caleb had visited with one or both children only 14 times over the past four years, for a total of 33 days, such that the main reason for the downward deviation in child support was no longer applicable. Lisa requested the court to raise Caleb's child support obligation to the statutory guideline amount of 28% of his net income. In his answer, Caleb agreed that a reasonable increase in child support was warranted, but he proposed his obligation be raised only to $1600 per month with a $2400-per-year increase in his contribution to the children's college fund.

¶ 7    Numerous pleadings were filed by the parties over the next year, and the litigation became increasingly acrimonious, due at least in part to both parties alleging discovery abuses. In July 2016, Lisa and the children moved to Munster, Indiana. On August 11, 2016, the circuit court issued an order after it held a hearing on multiple matters. The court allowed Caleb's attorney to withdraw, and he proceeded *pro se*. Among other things, the court also gave the parties 28 days to file new financial disclosure statements.

¶ 8    After he began representing himself, Caleb filed several motions, including a combined motion to dismiss for lack of subject-matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim for which relief could be granted. Because Lisa was residing in Indiana with the children, he also filed for modification of the child-support order in Indiana. Lisa was required to hire Indiana counsel to litigate Caleb's additional claims.

¶ 9 Caleb failed to comply with the financial disclosure statement deadline, causing Lisa to file a petition for rule to show cause in September 2016. She alleged that Caleb was attempting to delay the resolution of her petition to modify the child-support order. The circuit court granted the petition and issued a rule against Caleb ordering him to comply within five days. In addition, the order stated that Caleb had withdrawn all of his pending pleadings, including his motion to dismiss for lack of subject-matter jurisdiction.

¶ 10 The circuit court held a hearing on Lisa's petition to modify the child-support order on October 14, 2016. As a result, Caleb's child-support obligation was increased.

¶ 11 One month later, Lisa filed a petition for contribution to attorney fees and costs. In the petition, Lisa alleged that a significant portion of the attorney fees she incurred were due to Caleb's "litigious nature," including his "habitual refusal to comply with discovery and the Court's orders."

¶ 12 The circuit court held a hearing on Lisa's petition for contribution on January 27, 2017. After hearing arguments, the court granted Lisa's petition:

> "Well, you know, after hearing the parties, I am going to grant [Lisa her] fees. I find that a lot of the motions that were tendered were frivolous. We spent so much time on this case arguing over stuff that didn't matter.
>
> * * *
>
> And, you know, I find that this thing was a simple case that could have been solved thousands of dollars ago."

¶ 13 Several months later, Lisa sent a discovery request for records to a Texas law firm. In response, Caleb filed a motion for a protective order, alleging that he was not employed by that law firm and that her intent was merely "to humiliate and embarrass because she [knew] the request was invalid."

¶ 14 The circuit court held a hearing on several matters, including Caleb's motion for a protective order, on May 19, 2017. Counsel for Lisa informed the court that the subpoena was being withdrawn. Caleb argued that the protective order was still necessary because Lisa had engaged in this conduct multiple times during the life of the case. After hearing Caleb's argument, the court denied his motion:

> "I am going to deny your motion because I am not going to put any—first of all, *** he's withdrawing the subpoena. And I am not gonna put any restrictions on any future attempts.
>
> If things are improper, then they're, they're done when it happens ***."

¶ 15 After his posttrial motion to vacate was denied, Caleb appealed.

¶ 16                                    ANALYSIS

¶ 17 Caleb's first argument on appeal is that the circuit court lacked subject-matter jurisdiction to modify the child-support order. He claims that once Lisa and the children moved to Indiana, Illinois lost subject-matter jurisdiction.

¶ 18 Caleb's argument confuses subject-matter jurisdiction with personal jurisdiction. Subject-matter jurisdiction "refers to the power of a court to hear and determine cases of the general class to which the proceeding in question belongs." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002). "Personal jurisdiction refers to the court's power to bring a person into its adjudicative process." (Internal quotation marks omitted.)

*People v. Castleberry*, 2015 IL 116916, ¶ 12. The key difference for our purposes regarding this appeal is that except in the area of administrative review, the circuit court's subject-matter jurisdiction is conferred *entirely* by our constitution. *Belleville Toyota*, 199 Ill. 2d at 335 (citing Ill. Const. 1970, art. VI, § 9). In other words, as the *Castleberry* court summarized, " 'while the legislature can create new justiciable matters by enacting legislation that creates rights and duties, the failure to comply with a statutory requirement or prerequisite does not negate the circuit court's subject matter jurisdiction or constitute a nonwaivable condition precedent to the circuit court's jurisdiction.' " *Castleberry*, 2015 IL 116916, ¶ 15 (quoting *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 37).

¶ 19    Under section 9 of article VI of the Illinois Constitution, the subject-matter jurisdiction of the circuit court extends to all justiciable matters. Ill. Const. 1970, art. VI, § 9. "Generally, a 'justiciable matter' is a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota*, 199 Ill. 2d at 335. Caleb advances no argument that a justiciable matter was lacking in this case, nor could he.

¶ 20    What Caleb is actually referring to is personal jurisdiction; *i.e.*, the ability of the court to bring him and Lisa into its adjudicative process. See *Castleberry*, 2015 IL 116916, ¶ 12. Personal jurisdiction can be waived. Section 2-301(a-5) of the Code of Civil Procedure provides that, except in circumstances not applicable to this case, a "party fil[ing] a responsive pleading or a motion *** waives all objections to the court's jurisdiction over the party's person." 735 ILCS 5/2-301(a-5) (West 2016). Caleb filed his answer to Lisa's January 8, 2016, petition to modify the child-support order without objecting to the court's jurisdiction over his person. In doing so, he waived any such objection. Accordingly, to the extent that he attempts to challenge personal jurisdiction on appeal, we reject that argument.

¶ 21    Caleb's second argument on appeal is that the circuit court erred when it ordered him to contribute toward Lisa's attorney fees. In essence, Caleb contends that the contribution order was improper because Lisa did not properly plead contribution and because the court did not hold an evidentiary hearing on the parties' ability to pay.

¶ 22    In relevant part, section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) provides:

> "If at any time a court finds that a hearing under this Act was precipitated or conducted for any improper purpose, the court shall allocate fees and costs of all parties for the hearing to the party or counsel found to have acted improperly. Improper purposes include, but are not limited to, harassment, unnecessary delay, or other acts needlessly increasing the cost of litigation." 750 ILCS 5/508(b) (West 2016).

The circuit court has discretion in determining whether to award attorney fees, and we will not disturb that decision unless the court abused that discretion. *In re Marriage of Wolf*, 180 Ill. App. 3d 998, 1009 (1989).

¶ 23    Caleb's argument on this issue is without merit. Lisa's petition for contribution requested contribution in the nature of sanctions. Under section 508(b), a circuit court can impose fees as a sanction without having to consider the parties' ability to pay. *In re Marriage of Putzler*, 2013 IL App (2d) 120551, ¶ 40. Here, at the January 27, 2017, hearing on Lisa's petition, the court clearly found that Caleb had engaged in the type of "improper purposes" addressed by section 508(b) of the Act. 750 ILCS 5/508(b) (West 2016). Surprisingly, Caleb advances no argument on appeal specifically aimed at the court's finding that Caleb's litigation strategy

subjected him to sanctions. Rather, the bulk of his argument is spent on irrelevant matters, such as an argument related to Lisa's litigation strategy, or fundamental misunderstandings of the law in this area, including arguments such as the aforementioned lack of an evidentiary hearing. Absent a relevant and compelling argument, we hold that the circuit court's sanctions ruling did not constitute an abuse of discretion.

¶ 24 Caleb's third argument on appeal is that the circuit court erred when it denied his motion for a protective order.

¶ 25 Illinois Supreme Court Rule 201(c)(1) (eff. July 1, 2014) provides:

> "The court may at any time on its own initiative, or on motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression."

The decision of whether to enter a protective order is a matter within the circuit court's discretion, and we will not disturb that ruling absent an abuse of that discretion. *In re Daveisha C.*, 2014 IL App (1st) 133870, ¶ 28.

¶ 26 Our review of the record reveals no error in the circuit court's decision to deny Caleb's motion for a protective order. First, Lisa withdrew the subpoena that led to Caleb filing the motion, thereby mooting the issue as it applied to that subpoena. See *Johnson v. Quern*, 90 Ill. App. 3d 151, 155 (1980) (noting "[a] moot question is one that existed but because of the happening of certain events has ceased to exist and no longer presents an actual controversy over the interest or rights of the party"). Second, to the extent that Caleb sought future protection against alleged discovery abuses by Lisa, the court ruled that it would address any future discovery abuses as they occurred, rather than placing any limits on Lisa's ability to obtain discovery. Under these circumstances, we find no abuse of discretion in the court's ruling. See *Payne v. Hall*, 2013 IL App (1st) 113519, ¶ 12 (holding that "[a] court abuses its discretion only if it acts arbitrarily, without the employment of conscientious judgment, exceeds the bounds of reason and ignores recognized principles of law; or if no reasonable person would take the position adopted by the court").

¶ 27 CONCLUSION

¶ 28 The judgment of the circuit court of Will County is affirmed.

¶ 29 Affirmed.